HUESTON HENNIGAN LLP
John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
Michael Stephan, State Bar No. 272291
mstephan@hueston.com
Brian C. Berggren, State Bar No. 279279
bberggren@hueston.com
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone:   (949) 229-8640
Facsimile:    (888) 775-0898

Attorneys for Plaintiff
Glaukos Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| GLAUKOS CORPORATION, | Case No. _____ |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **1. DEFEND TRADE SECRETS ACT**<br>**2. CALIFORNIA UNIFORM TRADE SECRETS ACT**<br>**3. BREACH OF CONFIDENTIAL INFORMATION AGREEMENT**<br>**4. BREACH OF FIDUCIARY DUTIES & DUTY OF LOYALTY**<br>**5. UNFAIR COMPETITION LAW (CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200)** |
| JACQUELINE BAILEY, | |
| Defendant. | |
| | **DEMAND FOR JURY TRIAL** |

COMPLAINT

5074430

Plaintiff Glaukos Corporation ("Glaukos") brings this action against Defendant Jacqueline Bailey ("Defendant") for theft of trade secrets, breach of the parties' Confidential Information Agreement, and additional violations of state law.

## I.    INTRODUCTION

1.    Defendant is a former Glaukos sales representative who left on August 31, 2016 to work for Glaukos's primary competitor, Alcon Laboratories, Inc. ("Alcon").  In the weeks preceding her departure, Defendant systematically identified, accessed, and collected Glaukos's confidential information and trade secrets relevant to, and for use at, her new job with Alcon.  When possible, she forwarded these materials to her personal email account.  When Glaukos's security measures prevented her from downloading, printing, or forwarding electronic copies of Glaukos's confidential materials, Defendant took pictures of the materials displayed on a computer monitor with her phone and forwarded those pictures to her personal email account.

2.    Since Defendant's departure, forensic analysts have determined that Defendant improperly accessed, copied, or otherwise collected at least the following types of Glaukos confidential information and trade secrets:

- Glaukos's customer lists for the Southeast region, including detailed product purchase information such as quantities and revenues for over 100 customers;
- Glaukos's business plans for the Southeast region, including detailed information about potential customers to target and an analysis of Glaukos's near-term business risks;
- Glaukos's presentations and written plans for its competitive strategies, including strategies for competing with the very company that Defendant now works for;
- Glaukos's strategies regarding sales and marketing of products to teaching institutions, and confidential analysis of potential competition over such customers;
- Customer preferences and information regarding contracts and device reimbursements for Glaukos's products;
- Directions from sales directors on how to communicate with Glaukos customers about specific issues those customers may encounter when using Glaukos products during surgery; and

-1-

5074430

- Training examinations that Glaukos developed in order to train its employees and confirm that the employees were educated about critical issues relating to Glaukos's products before interacting with customers. Glaukos marked these training examinations as "FOR INTERNAL USE ONLY."

3.      Although Defendant was obligated to protect Glaukos's confidential information and trade secrets during and after her employment with Glaukos and to "surrender" all such materials in her possession upon leaving the Company, she has refused to do so.  Instead, she has resorted to lies and misdirection to conceal the scope of her theft.  During her formal exit process on the day of her resignation, Defendant denied having any of Glaukos's highly confidential information or trade secrets in her possession and certified that representation in writing.  Later, when computer forensic analysts discovered Defendant's theft and the falsity of her certification, Glaukos contacted Defendant to request an explanation for her suspicious electronic activity in the weeks preceding her departure and the immediate return of all Glaukos materials. Defendant refused to acknowledge her misdeeds.   Other than admitting that she still possessed the personal USB device that she plugged into her Glaukos computer, she has ignored Glaukos's requests.  In fact, although she promised to return the personal USB device, she has yet to do so.

4.      Defendant's misappropriation of Glaukos's confidential information and trade secrets in an effort to benefit her new employer, Alcon, began before she even left Glaukos.  On the same day she gave her two-week notice, Defendant sent an email to numerous Glaukos customers (but not Glaukos personnel) announcing her decision to leave Glaukos and join its competitor.  She communicated with several of these customers about her new position at Alcon using her Glaukos corporate email account, and in at least one instance, forwarded her communications with Glaukos customers to her new bosses at Alcon.

5.      Glaukos seeks to prevent any additional immediate and irreparable damage through Defendant's unauthorized disclosure and use of Glaukos's confidential information and trade secrets.  The files that Defendant has stolen contain

5074430

detailed, proprietary information concerning customer lists and purchase information, how Glaukos trains its sales force, communications with customers on product use and pricing, and Glaukos's overall business strategy for competing with the very company that Defendant now works for.  In short, Defendant possesses stolen information that will give her new employer (and any other company) an unfair, unearned competitive advantage over Glaukos and insights into its sales, marketing, and training strategies. Defendant must be prevented from sharing this valuable, confidential information.

## II.   PARTIES

6.   Plaintiff Glaukos is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 229 Avenida Fabricante, San Clemente, California 92672.

7.   On information and belief, Defendant Jacqueline Bailey is an individual that resides in the State of Georgia.  Her last known address is 8885 Maple Run Trail, Gainesville, Georgia 30506.  From October 2015 until August 31, 2016, Defendant was employed as a Senior Regional Business Manager at Glaukos.

8.    On information and belief, Defendant is currently the National Training and Key Opinion Leader ("KOL") Manager for Alcon Laboratories, Inc., one of the main competitors for Glaukos.   Upon information and belief, Defendant will be responsible for training and preparing Alcon personnel to be technical product experts, including on the science and technology behind the relevant components of surgical glaucoma and the CyPass® Micro-Stent, Alcon's competing device; developing and providing training and staff development programs for Alcon sales representatives; and coaching Alcon personnel on selling in various environments.

## III.   JURISDICTION AND VENUE

9.   This Court has original jurisdiction of this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over the remaining state law claims asserted herein pursuant to 28 U.S.C. § 1367.  Further, this Court has diversity jurisdiction over this action

5074430

1  under 28 U.S.C § 1332 because there is complete diversity and the amount in
2  controversy exceeds $75,000, exclusive of interest and costs.

3       10.   Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of
4  the events or omissions giving rise to the claims occurred, and a substantial part of the
5  property and confidential information that is the subject of this action is situated, in
6  Orange County, California.   Additionally, venue is proper under the parties'
7  Confidential Information Agreement, which permits the matter be filed in California.

8  **IV.    BACKGROUND**

9       **A.    Glaukos's Business of Transforming Glaucoma Treatments**

10      11.   Glaukos is an ophthalmic medical technology company focused on the
11  development and commercialization of breakthrough products and procedures
12  designed to transform the treatment of glaucoma, one of the world's leading causes of
13  blindness.   Glaukos pioneered the Micro-Invasive Glaucoma Surgery ("MIGS") to
14  revolutionize the traditional glaucoma treatment and management paradigm.

15      12.   Glaukos launched the iStent® Trabecular Micro-Bypass Implant, its first
16  MIGS device, in the United States in July 2012.  The iStent® is the smallest medical
17  device ever approved by the Food and Drug Administration, measuring 1.0 mm long
18  and 0.33 mm wide.  Glaukos continues to leverage its platform technology in the
19  iStent® to build a comprehensive and proprietary portfolio of micro-scale injectable
20  therapies designed to address the complete range of glaucoma disease states and
21  progression.

22      13.   Glaucoma is a group of eye diseases characterized by progressive,
23  irreversible and largely asymptomatic vision loss caused by optic nerve damage, which
24  is most commonly associated with elevated levels of pressure within the eye, or
25  intraocular pressure.  Elevated intraocular pressure often occurs when aqueous humor,
26  the thin watery fluid that fills the front part of the eye, is not circulating normally
27  and/or draining properly.  Glaucoma is a chronic condition that progresses slowly and
28  can have a devastating impact on a patient's vision and quality of life.

5074430

14.     Reducing intraocular pressure is the only proven treatment for glaucoma. Glaucoma has traditionally been treated through a range of approaches that often require patients to use prescription eye drops for the rest of their lives, and sometimes undergo complex and invasive eye surgery.  Unfortunately, these medications can be ineffective over time due to patient noncompliance and other factors.  Complex and invasive glaucoma surgical options are typically reserved for more advanced stages of the disease and have remained largely unchanged since the 1970's.

15.     Glaukos developed MIGS to address the shortcomings of current glaucoma treatment options.  MIGS procedures involve the insertion of a micro-scale device from within the eye's anterior chamber through a small corneal incision.  MIGS devices reduce intraocular pressure by restoring the natural outflow pathways for aqueous humor.  Based on clinical studies and reports, MIGS procedures are safer, preserve more eye tissue, and result in faster recovery times and fewer complications than invasive glaucoma surgical options.

16.     The iStent® is the first commercially-available MIGS treatment solution. The iStent® received FDA approval for insertion in combination with cataract surgery, and based on clinical reports and studies, the iStent® has been shown to lower intraocular pressure in patients with mild-to-moderate open-angle glaucoma, which represents the majority of glaucoma cases in adult patients.  Prior to July 2016, the iStent® was the only FDA-approved MIGS device for the treatment of mild to moderate open-angle glaucoma.

17.     Upon information and belief, on July 29, 2016, Alcon received FDA approval for the CyPass® Micro-Stent.  The CyPass® Micro-Stent will be only the second MIGS device offered for sale in the United States, and once released, will compete directly with Glaukos's iStent®.  Like the iStent®, the CyPass® Micro-Stent is designed to treat patients with mild to moderate primary open-angle glaucoma in conjunction with cataract surgery.

-5-
COMPLAINT

5074430

**B.    Glaukos's Sales Organization and Marketing Efforts**

18.    Since the introduction of the iStent® in July 2012, Glaukos has built and grown its commercial organization, which includes a direct sales force in the United States and Germany, and distribution partners in Europe, Asia Pacific, Canada, and other targeted international geographies.

19.    In the United States, Glaukos sells its products—including the iStent®—through a direct sales organization consisting of over 50 sales professionals, including regional business managers, sales directors, clinical relations personnel and reimbursement specialists.  Members of Glaukos's sales organization are primarily responsible for, among other things, training ophthalmic surgeons on the iStent® procedure; helping these physicians integrate the technology into their practices; and providing resources to support reimbursement, while also identifying and supporting investigational sites for clinical trials of our pipeline technologies.

20.    To ensure that its sales professionals are experienced with ophthalmic medical technologies, Glaukos invests significant time and expense to provide comprehensive training to its sales professionals.  Members of Glaukos's sales organization are required to be proficient in all aspects of its iStent® technologies, including features and benefits, procedure techniques and reimbursement.  Glaukos also provides its sales professions with continuing technical education regarding the eye's anatomy, glaucoma diagnosis, disease states and treatment, and surgery.

21.    Currently, Glaukos's sales efforts are largely aimed at ophthalmic surgeons and other eye care professionals.  Glaukos's primary customers include ophthalmic surgeons, hospitals, and ambulatory surgery centers.

**C.    Defendant's Role and Responsibilities at Glaukos**

22.    On October 5, 2015, Defendant joined Glaukos as a Senior Regional Business Manager.  In her role, Defendant was responsible for, among other things, marketing, selling, and training ophthalmic surgeons on the iStent® procedure in the Southeastern United States; helping these physicians integrate the technology into

5074430

1  their practices; and providing resources to support reimbursement.

2       23.    During the course of her employment, Defendant had regular access to

3  Glaukos's confidential sales and marketing information, such as customer lists,

4  customer purchasing history, product pricing and use guidelines, sales force training

5  materials, and business plans for competing with other participants in the global

6  glaucoma-treatment market, including Defendant's new employer, Alcon.

7       24.    Much of Defendant's access to sensitive Glaukos information was the

8  result of her having access to the "Glaukos Connect" system, which is a secure, online

9  platform by which Glaukos employees can view confidential training materials.

10 Defendant also had access to other sources of confidential information at Glaukos,

11 including live online presentations, known as webinars, for Glaukos's sales team.

12      25.    Glaukos also provided comprehensive and regular training to her—as

13 well as the other sales professionals—to ensure that they were proficient and

14 knowledgeable about   Glaukos's iStent®, including its features and benefits,

15 procedure techniques, and Glaukos's customer and marketing strategy.   Such

16 information is highly sensitive and kept confidential in the course of business, and as

17 a result, provides Glaukos with a competitive advantage over other participants in the

18 global glaucoma-treatment market.

19 **V.    GLAUKOS GUARDS AGAINST DISCLOSURE OF ITS TRADE**

20      **SECRETS AND CONFIDENTIAL INFORMATION**

21      26.    In order to maintain its competitive advantage, Glaukos maintains and

22 keeps secret all information regarding its business plans, strategies regarding sales and

23 marketing of product, customer lists, training materials, and related technical

24 documents.   Glaukos does this by maintaining the security—both physical and

25 electronic—of its premises and information technology systems.

26      27.    Glaukos places highly sensitive information on the "Glaukos Connect"

27 system, which is a secure, online platform by which Glaukos employees can view

28 confidential training materials.  The Glaukos Connect system is a main repository of

5074430

Glaukos's trade secrets.  Access to the Glaukos Connect system requires specific login credentials, which are provided to only certain users.  And even when access is provided, it is limited based on the type of user.  To further protect the information contained on the Glaukos Connect system, there are information technology restrictions that are designed to prevent employees from downloading, copying, and/or emailing contents of documents contained on the system.  Because the Glaukos Connect system contains confidential information about Glaukos products and product messaging, it has great value to potential competitors.

28.   Likewise, Glaukos restricts the disclosure of certain highly sensitive information to secure online presentations, known as webinars.  Rather than leaving this information on electronic repositories, Glaukos provides confidential information via access to secure, invitation-only online presentations.  This allows the presentation organizers to monitor viewing activity and prevent downloading or copying of the contents.  Such webinars have great value to a potential competitor.

**A.   To Protect Its Confidential Information, Glaukos Requires Its Employees to Agree to Rigorous Confidentiality Protections**

29.   Upon being hired at Glaukos, all employees are required to execute confidentiality agreements, referred to as the Confidential Information Agreement for Employees of Glaukos Corporation (the "Confidential Information Agreement").  The Confidential Information Agreement sets forth an employee's obligations with respect to, among other things, the property of Glaukos and the appropriate treatment of Glaukos's confidential information.

30.   On October 8, 2015, Defendant executed her Confidential Information Agreement with Glaukos, a copy of which is attached hereto as Exhibit 1.  Under the Confidential Information Agreement, Defendant agreed and/or acknowledged:

*I will not, without the prior written consent of (i) an officer of the Company, in the event that I am not an executive officer of the Company, and (ii) the Board of Directors of the Company, in the event that I am an executive officer of the Company, divulge to unauthorized persons, or use for any unauthorized purpose, either during or after the term of my employment, any information, matter, or thing of a secret, confidential*

-8-

5074430

*or private nature ("Confidential Information") connected with the business of the Company or any of its suppliers or customers.* Included within the meaning of Confidential Information are matters of a technical nature (including Inventions, know-how, formulae, computer programs, software and documentation, secret processes or machines, and research projects), *matters of a business nature (such as information about costs, profits, markets, sales, customers, potential customers, suppliers and employees), plans for further development, and any other information of a similar nature not available to the public*.

(Exhibit 1, Confidential Information Agreement, § 3 (emphasis added).)

31.     Likewise, to secure Glaukos's confidential information and other property from competitors, Glaukos required that the Defendant agree, as a condition of her employment, that she will not "directly or indirectly participate in, be employed by, consult for or assist any business which is a current or potential supplier, customer or competitor of the Company."  (*Id.* § 1.)

32.     Further, to ensure that departing employees do not take Glaukos's confidential information with them to their new employer, the Confidential Information Agreement specifies that:

PROPERTY OF THE COMPANY.   All notes, memoranda, reports, drawings, blueprints, manuals, materials, data and other papers and records of every kind which shall come into my possession at any time after the commencement of my employment with the Company, relating to any Inventions or Confidential Information shall be the sole and exclusive property of the Company. *This property shall be surrendered to the Company upon termination of my employment with the Company, or upon request by the Company, at any other time either during or after the termination of such employment*.

(Exhibit 1, Confidential Information Agreement, § 4 (emphasis added).)

33.     Glaukos has also taken steps to preserve its rights in the event that an employee misappropriates its confidential information.  As part of the Confidential Information Agreement, Defendant acknowledged Glaukos's right to pursue any legal remedies necessary to avoid any irreparable harm that results from her breach:

[T]he Company will suffer substantial damages not readily ascertainable or compensable in terms of money in the event of the breach of any of my obligations under this Agreement. I therefore agree that the Company shall be entitled (without limitation of any other rights or remedies otherwise available to the Company) to obtain an injunction from any court of competent jurisdiction prohibiting the continuance or recurrence of any breach of this Agreement.   I hereby submit myself to the jurisdiction and venue of the courts of the State of California for purposes

-9-

of any such action.  I further agree that service upon me in any such action or proceeding may be made by first class mail, certified or registered, to my address as last appearing on the records of the Company.

(Exhibit 1, Confidential Information Agreement, § 5.3.)

34.     Glaukos also provides its employees with   detailed confidentiality policies set forth in Glaukos's Code of Business Conduct & Ethics ("Glaukos Code"), a copy of which is attached hereto as Exhibit 2.  The Glaukos Code contains mandatory guidelines for the conduct of all employees.  Each new hire is provided with a copy of the Glaukos Code, and as part of the initial training process, new hires are instructed to review it carefully and to be knowledgeable about its terms.

35.     Defendant received, reviewed, and certified her compliance with the Glaukos Code on October 8, 2015, a copy of which is attached hereto as Exhibit 3.

36.     Given that Glaukos employees may have access to sensitive and proprietary information during the course of  their employment, the Glaukos Code defines the scope of "confidential information" at Glaukos and its meaning.   The Glaukos Code provides that "[c]onfidential information includes all nonpublic information that might be of use to competitors, or, if disclosed, harmful to the Company or its customers or suppliers."  (Exhibit 2, Glaukos Code at 4.)

37.     The Glaukos Code acknowledges that "[e]mployees and directors have a duty to safeguard all confidential information of the Company[.]"  (*Id.*)  To reiterate that obligation, including the duty to maintain confidentiality even after departing Glaukos, the Glaukos Code provides that:

> Unauthorized disclosure of any confidential information is prohibited. Additionally, employees and directors should take appropriate precautions to ensure that confidential or sensitive business information, whether it is proprietary to the Company or another company, is not communicated within the Company except to employees and directors who have a need to know such information to perform their responsibilities for the Company. An employee's and director's obligation to protect confidential information continues after he or she leaves the Company. Unauthorized disclosure of confidential information could cause competitive harm to the Company or its customers or suppliers and could result in legal liability to you and the Company.

(Exhibit 2, Glaukos Code at 4 (emphasis added).)

5074430

**B.   Defendant Signs Glaukos's Separation Certification, Which Reiterates the Importance of Maintaining Confidentiality**

38.    After Defendant's resignation on August 31, 2016, she underwent a formal exit process with Cheri Shelton at Glaukos.  As part of that exit process, Glaukos explained and Defendant signed a Separation Certification, a copy of which is attached hereto as Exhibit 4.

39.    The Separation Certification sets forth additional obligations with respect to the property of Glaukos and the appropriate treatment of Glaukos's confidential information.  Beyond Defendant's acknowledgement that she "complied with all terms of the Company's Confidential Information Agreement," Defendant affirmatively attested to the following:

> *This is to certify that I do not have in my possession, nor have I failed to return, any* devices, ***records, data,*** notes, ***reports, proposals, lists, computer files in any format or media, correspondence,*** specifications, drawings, blueprints, sketches, materials, equipment, ***other documents or property, or reproductions of any aforementioned items belonging to Glaukos Corporation***, its subsidiaries, affiliates, successors or assigns (together, "the Company").  I further agree that, in compliance with the Agreement, ***I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes***, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, ***customer lists, business plans, financial information or other subject matter pertaining to any business of the Company*** or any of its clients, consultants or licenses.

(Exhibit 4, Separation Certification at 1 (emphasis added).)

## VI.   DEFENDANT STEALS GLAUKOS'S TRADE SECRETS AND CONFIDENTIAL INFORMATION FOR USE AT A COMPETITOR

40.    In the two months before Defendant resigned from Glaukos to work for Glaukos's competitor, Alcon, she engaged in a careful scheme to steal trade secrets from Glaukos for use after her exit.

41.    Upon information and belief, Defendant began looking for a new and

5074430

similar position at one of Glaukos's competitor in or around June 2016.

42.     Upon information and belief, Defendant sent information about potential employment opportunities to herself through her own Glaukos corporate email account and used company property, relationships, and contacts in pursuit of those positions.

43.     Upon information and belief, Defendant sought letters of reference and/or recommendations from Glaukos's customers, including surgeons and other medical professionals that Defendant met through her employment at Glaukos.   Upon information and belief, the purpose of such letters of reference and/or recommendations were to aid Defendant in her pursuit of new employment at a competitor of Glaukos.

44.     During the weeks before Defendant's departure from Glaukos, Defendant engaged in purposeful and clandestine efforts to access, copy, and steal Glaukos's trade secrets and confidential information.  Among other things, Defendant improperly forwarded confidential information, including customer lists, business plans, and presentations, to her personal email account.  When Defendant was stonewalled by Glaukos's security measures, she  surreptitiously took photos with her personal phone of sensitive training materials and confidential presentations and emailed copies of the photos to her personal email account.

45.     Even though Glaukos is still determining the precise scope of Defendant's theft, the initial forensic examination shows that Defendant improperly accessed, copied, or otherwise stole the following types of Glaukos's trade secret and confidential information prior to her departure:

- Glaukos's customer lists for the Southeast region, including detailed product purchase information such as quantities and revenues for over 100 customers;

- Glaukos's business plans for the Southeast region, including detailed information about potential customers to target and an analysis of Glaukos's near-term business risks;

- Glaukos's presentations and written plans for its competitive strategies, including strategies for competing with the very company that Defendant now works for;

-12-
COMPLAINT

5074430

- Glaukos's strategies regarding sales and marketing of products to teaching institutions, and confidential analysis of potential competition over such customers;

- Customer preferences and information regarding contracts and device reimbursements for Glaukos's products;

- Directions from sales directors on how to communicate with Glaukos customers about specific issues those customers may encounter when using Glaukos products during surgery; and

- Training examinations that Glaukos developed in order to train its employees and confirm that the employees were educated about critical issues relating to Glaukos's products before interacting with customers. The examinations are marked "FOR INTERNAL USE ONLY."

46. Glaukos kept these documents, lists, business strategies, and training materials confidential and took reasonable steps to keep the information confidential by limiting its dissemination to only those who needed access as a part of their employment. This information derived value from its secrecy.

47. Upon information and belief, the Glaukos confidential information and trade secrets that Defendant stole are useful to her because Defendant's role at her new employer, Alcon, is similar to her role at Glaukos and she is responsible for training the Alcon sales team that markets, sells, and instructs doctors on the use of Alcon's CyPass® Micro-Stent.

48. Upon information and belief, Defendant attempted to conceal these wrongful acts by purging and deleting electronic evidence from her Glaukos corporate email account.

49. Defendant continued to engage in suspicious activity in the days before her departure from Glaukos.

50. On August 18, 2016, Defendant contacted Glaukos's help desk— managed by Alwaka Networks—for, upon information and belief, guidance on how to permanently remove items from her Glaukos corporate email account. That same morning, Defendant sent highly-sensitive and confidential Glaukos materials concerning the CyPass® Micro-Stent—her new employer's device that competes with the iStent®—from her Glaukos corporate email account to her personal email account.

5074430

Though not an exhaustive list, Defendant sent Glaukos confidential documents regarding the CyPass® Micro-Stent, including documents titled:

- "Transcend Medical CyPass Micro-Stent";
- "GSM Combined, Selling the Science and Competition";
- "Competitive Response Attorney Client Privileged 02.23.16"; and
- "Key Messages."

51.    On August 18, 2016, upon information and belief, Defendant accessed and/or logged into her DropBox account with her Glaukos computer.

52.    On August 27 2016, Defendant connected a personal USB device—a Lexar USB flash drive, Serial number AAKY0TB3EHC6UQSO—to her company computer. Based on a forensic examination, this was the first time this personal USB device was ever connected to Defendant's company computer. Defendant was not given permission or written authorization from Glaukos to connect the personal USB device. Upon information and belief, Defendant took the personal USB device with her when she left Glaukos on August 31, 2016.

53.    On August 29, 2016, Defendant deleted over 250 files from folders on her company computer between 5:32 p.m. and 5:34 p.m. Eastern Standard Time.

54.    On August 30, 2016, the night before Defendant informed Glaukos of her resignation, Defendant logged into the "Glaukos Connect" system for the first time in over a month. Defendant opened dozens of files concerning Glaukos's products, customers, business strategies, and confidential messaging for products offered by competitors, including the very product offered by Defendant's new employer. The next morning—after giving Glaukos formal notice of her resignation—Defendant continued her attempts to view highly-sensitive information on the Glaukos Connect system, including a newly-published whitepaper that discussed Glaukos's business plans and strategies for competing with Defendant's new employer and its product. Fortunately, before Defendant was able to review this whitepaper, Glaukos discovered that she was leaving for Alcon and promptly disabled her access to the system.

55.    Upon information and belief, all these materials were in Defendant's possession, custody, or control on the very day—August 31, 2016—that she certified in writing that she did "***not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, computer files in any format or media, correspondence***, . . . or reproductions of any aforementioned items ***belonging to Glaukos Corporation*** . . . ." (Exhibit 3, Separation Certification at 1 (emphasis added).)    Upon information and belief, these materials remain in Defendant's possession, custody, and control even today.

56.    Instead of surrendering all such information to Glaukos when her employment ended, as required by the Confidential Information Agreement, the Glaukos Code, and as she certified she had done in her Separation Certification, Defendant did the opposite.  Forensic evidence confirms that Defendant improperly forwarded confidential information, including customer lists, business plans, and presentations, to her personal email account; Defendant surreptitiously took photos with her personal phone of sensitive training materials and confidential presentations and emailed copies of the photos to her personal email account; and Defendant continued to engage in suspicious activity in the days before her departure.

### A.    Before Leaving Glaukos, Defendant Solicits Glaukos's Customers for Her New Employer, Alcon

57.    On the same day that Defendant announced her resignation from Glaukos, and within one hour of providing notice to Glaukos, Defendant sent an email—from her Glaukos corporate email account—to 78 Glaukos customers and contacts announcing her decision to leave Glaukos and join its competitor.  Defendant's email explained that she would be taking a national leadership role to help launch a product that competes with Glaukos's flagship glaucoma-treatment product, the iStent®.  The email also contained her personal contact information and invited recipients to "reach out anytime."  Glaukos personnel were not recipients of this email, Glaukos did not authorize it, and Glaukos was unaware of it until after Defendant left Glaukos and a

1   forensic examination was performed.

2       58.    In sending this email, Defendant improperly used Glaukos's property and
3   her access to Glaukos's customers and contacts to solicit business away from Glaukos
4   (and direct it to her new employer), while she was still employed at Glaukos.  Upon
5   information and belief, Defendant's purposeful choice to exclude any Glaukos
6   personnel from her email suggests that Defendant knew this solicitation was
7   prohibited, and would have been problematic for her if discovered.

8       59.    Several Glaukos customers responded to Defendant's resignation email
9   and expressed a desire to keep in touch as she transitioned to her new role at Glaukos's
10  competitor, Alcon.  Upon information and belief, several other Glaukos customers
11  called or texted Defendant in response to her resignation email.

12      60.    In at least one instance, a customer responded by email to say that he
13  looked forward to working with Defendant at Alcon, and Defendant then forwarded
14  that response from her Glaukos corporate email account directly to two high-ranking
15  employees of Alcon, the competitor for which Defendant now works.

16      61.    In the email to her new bosses, Defendant celebrated the numerous
17  responses that she got to her departure email, all of which were ill-gotten.

18      **B.    Defendant Lies to Conceal Her Theft of Confidential Information**
19              **and Ignores Glaukos's Resolution Efforts**

20      62.    Upon leaving Glaukos, Defendant participated in a formal exit process
21  and executed the Separation Certification, certifying, among other things, that she had
22  surrendered any and all Glaukos property, including Glaukos's confidential
23  information and its tangible property.  Defendant's representations were false.

24      63.    Glaukos has made numerous efforts to work with Defendant informally
25  to resolve this dispute.  Starting in September 2016, immediately after learning of
26  Defendant's theft of Glaukos's confidential information and trade secrets, Glaukos
27  contacted Defendant to demand that she return all Glaukos materials in her possession,
28  custody, or control; return the USB drive so Glaukos could evaluate it; confirm

1  compliance with her contractual and legal obligations to Glaukos; and inform Glaukos

2  of what use she had made of the stolen information.  As of the date of this Complaint,

3  Defendant has still not fully responded to Glaukos's repeated requests.  In fact,

4  Defendant has provided no response at all to Glaukos's second letter, sent on

5  September 27, 2016.

## FIRST CAUSE OF ACTION

### (Misappropriation of Trade Secrets – 18 U.S.C. §§ 1836, *et seq.*)

8  64.    Glaukos repeats, re-alleges, and incorporates by reference each of the

9  allegations of paragraphs 1 to 60 as if set forth fully herein.

10  65.    Defendant's conduct, set forth in the paragraphs above, constitutes one or

11  more acts of actual or threatened misappropriation of trade secrets within the meaning

12  of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*.

13  66.    Glaukos's confidential, proprietary, and competitively sensitive data

14  acquired by Defendant constitutes trade secrets under 18 U.S.C. §§ 1839(3)(a)–(b).

15  This information qualifies as a trade secret because Glaukos derives independent

16  economic value from its not being generally known to the public or to other persons

17  who can obtain economic value from its disclosure or use.  Further, the information

18  acquired by Defendant is a trade secret because Glaukos treats it, and has taken

19  reasonable efforts to keep it, as such.

20  67.    Without Glaukos's consent, upon information and belief, Defendant

21  knowingly acquired, disclosed, and/or used Glaukos's trade secrets, or threatened to

22  acquire, disclose, and/or use Glaukos's trade secrets.  Defendant did this through

23  improper means.

24  68.    The improper means used by Defendant to acquire Glaukos's trade

25  secrets include: breaching specific provisions of the Confidential Information

26  Agreement that Defendant signed; sending Glaukos documents embodying or

27  describing trade secrets to her personal email, storage devices, and/or private

28  computers for use at a competitor; and attempting to cover up the taking of these trade

5074430

1    secrets by deleting and/or hiding electronic traces of their theft.

2          69.    In addition to acquiring these secrets improperly, upon information and

3    belief Defendant has already, or soon will, misappropriate these secrets by disclosing

4    them to Alcon, an economic adversary of Glaukos's.   Defendant abandoned her

5    position at Glaukos for a position at Alcon, a company that seeks to establish itself as

6    one of Glaukos's competitors.   Defendant's disclosure or use of Glaukos's trade

7    secrets in her new position at Alcon threatens Glaukos with economic injury, as Alcon

8    will then have access to trade secrets that otherwise provide Glaukos with a

9    competitive advantage over its competitors.

10          70.    Glaukos is entitled to an injunction based on both actual and threatened

11    misappropriation as set forth in 18 U.S.C. § 1836(b)(3).

12          71.    Glaukos also requests that the Court take affirmative acts to protect its

13    trade secrets, as set forth in 18 U.S.C. § 1836(b)(3), including by ordering, among

14    other things, the inspection of Defendant's computers, personal USB devices, email

15    accounts, "cloud"-based storage accounts, and other sources and equipment by a

16    forensics expert to determine whether Glaukos trade secrets were wrongfully taken

17    and/or disseminated to others, and to ensure that no Glaukos trade secrets remain saved

18    on those systems; and issuing a writ of possession, a preliminary injunction and a

19    permanent injunction ordering the return of Glaukos's trade secret information.

20          72.    In addition to equitable relief, Glaukos demands monetary damages, fees

21    and costs, where allowed.

22          73.    Defendant's conduct, as alleged herein, was willful, malicious and

23    wanton, and undertaken for the purpose of causing injury to Glaukos.   As a result,

24    Glaukos seeks exemplary and punitive damages against Defendant.

25                        **SECOND CAUSE OF ACTION**

26          **(Misappropriation of Trade Secrets – Cal. Civ. Code §§ 3426, *et seq.*)**

27          74.    Glaukos repeats, re-alleges, and incorporates by reference each of the

28    allegations of paragraphs 1 to 60 as if set forth fully herein.

5074430

75.     Defendant's conduct, set forth in the paragraphs above, constitutes one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426, *et seq.*

76.     Glaukos's confidential, proprietary, and competitively sensitive data acquired by Defendant constitutes trade secrets under Cal. Civ. Code § 3426.1.  This information qualifies as a trade secret because Glaukos derives independent economic value from its not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.  Further, the information acquired by Defendant is a trade secret because Glaukos treats it, and has taken reasonable efforts to keep it, as such.

77.     Without Glaukos's consent, Defendant knowingly acquired, disclosed, and/or used Glaukos's trade secrets, or threatened to acquire, disclose, and/or use Glaukos's trade secrets.  Defendant did this through improper means.

78.     The improper means used by Defendant to acquire Glaukos's trade secrets include: breaching specific provisions of the Confidential Information Agreement that Defendant signed; sending Glaukos documents embodying or describing trade secrets to her personal email, storage devices, and/or private computers for use at a competitor; and attempting to cover up the taking of these trade secrets by deleting and/or hiding electronic traces of their theft.

79.     In addition to acquiring these secrets improperly, upon information and belief Defendant has already, or soon will, misappropriate these secrets by disclosing them to Alcon, an economic adversary of Glaukos's.  Defendant abandoned her position at Glaukos for a position at Alcon, a company that seeks to establish itself as one of Glaukos's competitors.  Defendant's disclosure or use of Glaukos's trade secrets in her new position at Alcon threatens Glaukos with economic injury, as Alcon will then have access to trade secrets that otherwise provide Glaukos with a competitive advantage over its competitors.

80.     Glaukos is entitled to an injunction based on both actual and threatened

-19-
COMPLAINT

5074430

1  misappropriation as set forth in Cal. Civ. Code § 3426.2(a).

2      81.   Glaukos also requests that the Court take affirmative acts to protect its
3  trade secrets, as set forth in Cal. Civ. Code § 3426.2(c), including by ordering, among
4  other things, the inspection of Defendant's computers, personal USB devices, email
5  accounts, "cloud"-based storage accounts, and other sources and equipment by a
6  forensics expert to determine whether Glaukos trade secrets were wrongfully taken
7  and/or disseminated to others, and to ensure that no Glaukos trade secrets remain saved
8  on those systems; and issuing a writ of possession, a preliminary injunction and a
9  permanent injunction ordering the return of Glaukos's trade secret information.

10     82.   In addition to equitable relief, Glaukos demands monetary damages, fees
11  and costs, where allowed.

12     83.   Defendant's conduct, as alleged herein, was willful, malicious and
13  wanton, and undertaken for the purpose of causing injury to Glaukos.  As a result,
14  Glaukos seeks exemplary and punitive damages against Defendant.

15               **THIRD CAUSE OF ACTION**
16         **(Breach of Confidential Information Agreement)**

17     84.   Glaukos repeats, re-alleges, and incorporates by reference each of the
18  allegations of paragraphs 1 to 60 as if set forth fully herein.

19     85.   As a condition of employment at Glaukos, all employees—including the
20  Defendant—certify and agree to be bound by the terms of the Confidential Information
21  Agreement.  The Confidential Information Agreement outlines the duties that current
22  and former employees owe to Glaukos with regard to valuable confidential
23  information they receive on account of their positions at Glaukos.

24     86.   Defendant was bound by and agreed to be bound by the Confidential
25  Information Agreement during the acts described in this complaint before and after her
26  departure.

27     87.   Paragraph 3 of the Confidential Information Agreement forbids any
28  former employee "without the prior written consent" from "divulg[ing] to

-20-
COMPLAINT

5074430

1   unauthorized persons, or us[ing] for any unauthorized purpose, either during or after

2   the term of my employment, any information, matter, or thing of a secret, confidential

3   or private nature ('Confidential Information') connected with the business of the

4   Company."

5       88.     Defendant breached the Confidential Information Agreement by secretly

6   downloading and taking confidential information for her own post-employment access

7   and use.  This prohibited access to Glaukos's confidential information was not done in

8   the course of performing her duties as an employee of Glaukos. Nor did the Defendant

9   obtain Glaukos's prior written consent.

10      89.     Paragraph 4 of the Confidential Information Agreement requires former

11  employees, upon termination of their employment, to "surrender[] to the Company

12  upon termination of my employment with the Company, or upon request by the

13  Company, at any other time either during or after the termination of such employment"

14  all confidential information, including "[a]ll notes, memoranda, reports, drawings,

15  blueprints, manuals, materials, data and other papers and records of every kind which

16  shall come into my possession at any time after the commencement of my employment

17  with the Company, relating to any Inventions or Confidential Information shall be the

18  sole and exclusive property of the Company."

19      90.     Defendant breached the Confidential Information Agreement by refusing

20  to surrender and retaining Glaukos's confidential and proprietary information for her

21  own post-employment access, use, and disclosure.

22      91.     Paragraph 1 of the Confidential Information Agreement provides that the

23  Defendant will not, during her employment, "directly or indirectly participate in, be

24  employed by, consult for or assist any business which is a current or potential supplier,

25  customer or competitor of the Company."

26      92.     Defendant breached the Confidential Information Agreement by, among

27  other things, preparing and executing a plan to steal confidential Glaukos data and

28  documents during her employment at Glaukos to assist her new employer in its

1   competitive activities; and improperly using her access to Glaukos's customers and

2   contacts to solicit business away from Glaukos while still employed at Glaukos.

3       93.   Glaukos was damaged by Defendant's breaches, including by the loss of

4   confidential information taken by the Defendant and the loss of customers to

5   Defendant's new employer, a competitor of Glaukos.  Additionally, upon information

6   and belief, Defendant has used and will continue to use Glaukos's information to

7   further the goals of her employment with Alcon, which is competing with Glaukos.

8   **FOURTH CAUSE OF ACTION**

9   **(Breach of Fiduciary Duties & Duty of Loyalty)**

10       94.   Glaukos repeats, re-alleges, and incorporates by reference each of the

11   allegations of paragraphs 1 to 60 as if set forth fully herein.

12       95.   By virtue of her employment and responsibilities at Glaukos, and her

13   status as an agent of Glaukos, Defendant owed Glaukos a duty of undivided loyalty

14   and certain fiduciary duties.  At all times, Defendant was duty bound to act with the

15   utmost good faith and in the best interests of Glaukos.

16       96.   As alleged above, Defendant engaged in gross misconduct in violation of

17   her fiduciary duties and the duty of loyalty to Glaukos by, among other things,

18   improperly using her access to Glaukos's customers and contacts to solicit business

19   away from Glaukos while still employed at Glaukos.

20       97.    Defendant knowingly acted in a bad-faith manner adverse to Glaukos's

21   best interests and inconsistent with her fiduciary duties and the duty of undivided

22   loyalty.  As alleged above, Defendant knew that her solicitation of Glaukos's current

23   customers was prohibited and would have been problematic for her if discovered, and

24   in an effort to conceal her conduct, she chose not to include Glaukos personnel in those

25   communications.

26       98.   Glaukos did not give informed consent to Defendant's conduct.

27       99.   Glaukos was harmed by Defendant's actions and such actions were a

28   substantial factor in causing Glaukos's harm.

5074430

100.   As a proximate result of the Defendant's actions, Glaukos has suffered, and will continue to suffer, damages in an amount to be proven at trial.

101.   Defendant's acts were undertaken intentionally and in conscious disregard both of Glaukos's rights and of the fiduciary duties and duty of loyalty that Defendant owed to Glaukos.   Defendant's acts were malicious, oppressive, and/or fraudulent.   Therefore, Glaukos should be awarded punitive damage and exemplary damages sufficient to punish Defendant and to deter similar conduct in the future.

## FIFTH CAUSE OF ACTION

### (Unfair Competition – Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

102.   Glaukos repeats, re-alleges, and incorporates by reference each of the allegations of paragraphs 1 to 60 as if set forth fully herein.

103.   Defendant's conduct, set forth in the paragraphs above, constitutes one or more acts that are unfair, unlawful, and/or fraudulent within the meaning of the Unfair Competition Law of California, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

104.   Defendant has engaged in conduct that is unfair under the various tests for unfairness recognized by courts applying the Unfair Competition Law.   This conduct, described elsewhere in this Complaint includes, but is not limited to: obtaining Glaukos's information for post-employment access, use, and disclosure in violation of Defendant's written promise not to do so; falsely stating that Defendant did not retain Glaukos property or data at the end of their employment; and—while still employed by Glaukos—utilizing improper and unethical means to hoard Glaukos's confidential information for her private, post-employment use, thereby betraying her duty of undivided loyalty to her then-employer. Defendant impeded and/or attempted to impede competition in a manner inconsistent with the legislative goals reflected by the Unfair Competition Law, and engaged in conduct that is illegal, immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Glaukos.

105.   Defendant has also engaged in conduct that is fraudulent. Defendant's

-23-
COMPLAINT

5074430

fraudulent conduct, as described elsewhere in this Complaint included, but is not limited to: feigning compliance with the Confidential Information Agreement and its post-employment restrictions on Defendant's use of confidential information; and making false statements to employees of Glaukos regarding Defendant's compliance with the terms of the confidentiality agreement and regarding their plans to work for Alcon, a competitor of Glaukos.

106.   Defendant has engaged in conduct that is unlawful.  Defendant violated California Penal Code Section 502 by, among other things, knowingly and without permission (1) accessing, taking, copying, and making use of data from computers, computer systems, and computer networks; (2) accessing or causing to be accessed computers, computer systems, and computer networks; (3) and using computer data in order to wrongfully obtain money, property, or data.  Glaukos is the owner of those computers, computer systems, computer networks, or data and has suffered damage by Defendant's violation this law.

107.   Glaukos has suffered an injury in fact and lost money and/or property as a result of Defendant's unfair, unlawful, and fraudulent business practices.

108.   Defendant's unfair, unlawful, and fraudulent conduct as described above poses a serious and continuing threat to Glaukos.

109.   If Defendant is allowed to continue her unfair, unlawful, and fraudulent acts, Glaukos will suffer further immediate and irreparable injury, loss or damage. In the absence of a permanent injunction as prayed for below, Defendant will continue to engage in fraudulent business practices to her profit, her new employer's benefit, and Glaukos's detriment.

110.   In order to prevent her unjust enrichment at the expense and detriment of Glaukos, Defendant should be required pursuant to Cal. Bus. & Prof. Code § 17203 to make full restitution to Glaukos.  Defendant also should be permanently enjoined from continuing her violations and the ongoing detrimental effects thereof.

5074430

## **PRAYER FOR RELIEF**

WHEREFORE, Glaukos requests the following relief:

1.    An order in favor of Glaukos and against Defendant on all of Glaukos's claims asserted in the Complaint;

2.    The issuance of a temporary restraining order, preliminary injunction, and final, permanent injunction against Defendant as follows:

        A.    That Defendant be preliminarily and permanently enjoined from disclosing or utilizing for any purpose Glaukos's trade secrets and confidential information;

        B.    That Defendant be directed to immediately return to Glaukos any and all of Glaukos's trade secrets and confidential information in her possession, custody, and control;

        C.    That, pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(2)(A), Glaukos or an authorized representative may seize Defendant's home and business computers (including laptops and desktops), mobile telephones, memory devices, electronic data storage media, "cloud"-based file storage accounts, personal email accounts, and hardcopy documents to search, at Defendant's expense, for Glaukos's confidential information (and other property belonging or relating to Glaukos) and to arrange for the deletion of any and all such confidential information from those computers, media, devices, and email accounts; and

        D.    That pending delivery to Glaukos of the materials described in Paragraph 2(C) of this Prayer for Relief, Defendant be enjoined and restrained from destroying: (i) any electronic or hard copy document, file, record, information, or other property containing any of Glaukos's confidential information; and (ii) any data contained on any of her  home and business computers (including

5074430

laptops and desktops), memory devices, mobile telephones, electronic data storage media, "cloud"-based file storage accounts, or personal email accounts.

3. An award requiring that Glaukos's trade secrets and confidential information be returned to Glaukos;

4. An award requiring Defendant to divulge the identity of the individuals, groups, and/or companies to whom she has disclosed Glaukos's trade secrets and confidential information;

5. An award requiring Defendant to account for and pay to Glaukos all ill-gotten gains, profits, and savings obtained or derived from her improper conduct;

6. Compensatory damages to be proven at trial in this action and an order that Defendant pay Glaukos double damages on its claim for relief pursuant to Cal. Civ. Code § 3426.3 and 18 U.S.C. § 1836(b)(3);

7. Punitive damages in an amount to be determined at trial in this action for Defendant's intentional, tortious, and wrongful conduct;

8. Other monetary damages in an amount to be determined at trial in this action, including Glaukos's actual losses; Defendant's unjust enrichment; exemplary damages for willful and malicious misappropriation; expectation, consequential, and incidental damages resulting from Defendants' breaches; disgorgement of compensation paid by Glaukos to Defendant during the time period during which Defendant breached her fiduciary duties and duty of loyalty; disgorgement of compensation received by Defendant from other entities, including her new employer, as a result of breaches of her fiduciary duties and duty of loyalty; and restitution;

9. Reasonable costs and expenses incurred in this action, including attorneys' fees and investigation costs incurred as a result of Defendant's failures to disclose her wrongful conduct, to the full extent permitted by law;

10. Pre-judgment interest on all such damages, monetary or otherwise; and

11. For all other relief, legal or injunctive, as this Court deems appropriate.

## JURY DEMAND

Glaukos hereby demands a trial by jury on all claims (or any aspect thereof) contained in its Complaint as to which a trial by jury is proper.

Dated:  October 7, 2016

HUESTON HENNIGAN LLP

By:

John C. Hueston

Attorneys for Plaintiff
Glaukos Corporation

-27-
COMPLAINT

5074430

1

## **VERIFICATION**

2     I am the Senior Vice President, General Counsel of Glaukos, a party to this

3 action, and am authorized to make this verification on its behalf.  I have read the

4 foregoing Complaint and, based on either my personal knowledge or a reasonable

5 investigation, I believe that the factual allegations contained therein are true.  As to

6 those allegations that are made on information and belief, I am informed and believe

7 that they are true.

8     I declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that the

9 foregoing is true and correct.

10

11 Dated: October 7, 2016

12                                Robert L. Davis
                               Senior Vice President. General Counsel
                               Glaukos Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5074430