HUESTON HENNIGAN LLP
John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
Michael J. Stephan, State Bar No. 272291
mstephan@hueston.com
Brian C. Berggren, State Bar No. 279279
bberggren@hueston.com
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone:   (949) 229-8640
Facsimile:    (888) 775-0898

Attorneys for Plaintiff
Glaukos Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| GLAUKOS CORPORATION, | Case No. 8:16-cv-01856-JLS-JCG |
| Plaintiff, | **PLAINTIFF GLAUKOS CORPORATION'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| JACQUELINE BAILEY, | |
| Defendant. | |
| | [Declarations of Richard Gralnik, Chris Calcaterra, Mark Menzies, Michael J. Stephan, and John Scheerer; and Proposed Orders filed concurrently] |

## <u>EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER</u>
## <u>AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION</u>

To the Honorable Judge of the United States District Court of the Central District of California:

Plaintiff Glaukos Corporation ("Glaukos") petitions this Court *ex parte* for a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure and L.R. 65-1. This *ex parte* Application is brought on the grounds that Defendant Jacqueline Bailey has stolen dozens of files containing highly valuable Glaukos trade secrets and other confidential information. Defendant is currently employed by a competitor of Glaukos that would derive great value from her immediate use or disclosure of stolen trade secrets and confidential information. Defendant had strict confidentiality agreements with Glaukos prohibiting her from retaining Glaukos files after she left Glaukos, and from disclosing Glaukos's confidential or proprietary information to competitors. Defendant has breached these agreements, and has failed to comply with Glaukos's requests that she return all stolen files and provide a written list of the same.

Glaukos petitions this Court *ex parte* for a temporary restraining order pursuant to Rule 65:

1. Prohibiting Defendant, her agents, co-conspirators, and anyone acting on her behalf or in concert with her, from committing or performing, directly or indirectly, any and all of the following acts:

   A. Using, accessing, sharing, or disclosing any documents, files, or materials in Defendant's possession, whether electronic or physical, that Defendant took or retained from Glaukos during or after leaving Defendant's employ with Glaukos;

   B. Deleting, altering, concealing, destroying, or transferring to any other person or device any data, documents, or other electronic materials obtained from Glaukos that are located on any and all

desktops, laptops, server computer systems, mobile devices, personal digital assistants, removable USB drives and memory devices, external hard drives, email accounts, or storage databases of any kind that are in Defendant's possession or under her control;

    C.    Altering, concealing, or destroying any evidence of taking, accessing, sharing, transferring, or disclosing any data, documents, or other electronic materials that Defendant obtained from Glaukos; and

    D.    Altering, concealing, or destroying any physical documents or materials Defendant took from Glaukos.

2.    Requiring Defendant, within 72 hours of the entry of any order, to:

    A.    Provide Glaukos with a written list under oath of any and all persons or organizations to which she has disclosed or shared any of the documents, files, or materials as described in Paragraph 1(A) above or any of the information reflected therein;

    B.    Turn over to OnlineSecurity, a computer forensics company, any and all electronic devices that contain, or have previously contained, electronic data taken or retained from Glaukos during or after Defendant's employment with Glaukos, including, but not limited to, any personal electronic devices (*e.g.*, computer or smartphone) and the Lexar USB_Flash_Drive Rev_1100, SN:AAKY0TB3EHC6UQSO, for the purpose of making a computer image of that device's memory; and

    C.    Permit OnlineSecurity to temporarily access Defendant's Gmail account (jackiebailey2@gmail.com) and cloud-based storage accounts, including DropBox, for the purpose of making a copy of all data in those accounts.

3.    Seeking an Order to Show Cause why a preliminary injunction should not

1  be granted to provide the same relief requested in Paragraph 1 above until

2  after the parties' disputes are resolved at trial.

3  Glaukos has made efforts to give notice of this *ex parte* Application to

4  Defendant as required by Rule 65. (*See* Stephan Decl. Re Notice ¶ 2.)  This *ex parte*

5  Application is based on the Application itself; the attached Memorandum of Points

6  and Authorities; the Declarations of Richard Gralnik, Chris Calcaterra, Mark Menzies,

7  Michael J. Stephan, and John Scheerer, and accompanying exhibits; the Complaint,

8  and all other pleadings, records, and files herein; and such other matters as the Court

9  may take judicial notice, as well as materials presented at the hearing.  This is

10  Glaukos's first request for such relief.

11

12  Dated: October 7, 2016                    HUESTON HENNIGAN LLP

13

14                                       By: */s/ Douglas J. Dixon*

15                                           John C. Hueston
                                             Douglas J. Dixon
16                                           Michael J. Stephan
                                             Brian C. Berggren
17
                                             *Attorneys for Plaintiff*
18                                           *Glaukos Corporation*

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................. 1

II. FACTUAL BACKGROUND ............................................ 4

    A.   Defendant Exploits Her Access to Confidential Glaukos Databases to Steal Dozens of Proprietary Materials Concerning Customer Information and Business Strategies ................ 4

    B.   After Months of Undetected Theft, Defendant Solicits Glaukos's Customers, Tries to Access Key Trade Secrets, then Leaves Glaukos to Join a Competitor ............................ 7

    C.   Defendant's Theft of Confidential Information Is Strictly Prohibited by Her Confidential Information Agreement and Separation Certification ................................................... 10

    D.   Defendant Fails to Comply with Glaukos's Efforts to Mitigate Dissemination of Its Confidential Information, Thereby Suggesting a Likelihood that She Will Continue to Harm Glaukos ...................................................................... 12

II. ARGUMENT ................................................................... 13

    A.   Glaukos Will Suffer Immediate and Irreparable Injury Unless this Court Issues the Requested Orders ..................... 13

    B.   The Court Should also Issue an Order to Show Cause Why a Preliminary Injunction Should Not Be Granted ................ 17

        1.   Glaukos Faces Irreparable Harm ............................... 17

        2.   Glaukos Will Prevail on the Merits of Its Claims ..... 17

            a.   Misappropriation of Trade Secrets Under the Defend Trade Secrets Act ................................ 18

            b.   Misappropriation of Trade Secrets under The California Uniform Trade Secrets Act. ("CUTSA") ......................................................... 19

            c.   Breach of Confidential Information Agreement ..................................................... 20

            d.   Breach of Fiduciary Duties and Duty of Loyalty ........................................................ 22

            e.   Unfair Competition Law ("UCL") ................. 22

        3.   The Balance of Hardships Tips in Glaukos's Favor ................. 23

        4.   A Preliminary Injunction Is in the Public Interest ..................... 24

        5.   The Court Should Not Require a Bond ..................... 24

III. CONCLUSION ................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barney v. Burrow*,
   558 F. Supp. 2d 1066 (E.D. Cal. 2008)...........................................................16

*California v. Tahoe Regional Planning Agency*,
   766 F.2d 1319 (9th Cir. 1985)........................................................................24

*Cleveland v. Johnson*,
   209 Cal. App. 4th 1315 (Ct. App. 2012).......................................................22

*Courtesy Temp. Serv., Inc. v. Camacho*,
   222 Cal. App. 3d 1278 (Ct. App. 1990).........................................................23

*Farmers Ins. Exch. v. Superior Court*,
   2 Cal. 4th 377 (1992)....................................................................................23

*FPI Development Inc., v. Nakashima*,
   231 Cal. App. 3d 367 (Ct. App. 1991) ..........................................................20

*Gable-Leigh, Inc. v. N. Am. Miss*,
   No. CV 01-01019 MMM(SHX), 2001 WL 521695 (C.D. Cal.
   Apr. 13, 2001)..........................................................................................14, 24

*Gorbach v. Reno*,
   219 F.3d 1087 (9th Cir. 2000).......................................................................24

*Huong Que, Inc. v. Luu*,
   150 Cal. App. 4th 400 (Ct. App. 2007) .........................................................22

*Jorgansen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003).........................................................................24

*Klamath-Orleans Lumber, Inc. v. Miller*,
   87 Cal. App. 3d 458 (Ct. App. 1978) ............................................................22

*MAI Systems Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993).........................................................................20

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Garcia*,
   127 F.Supp.2d 1305 (C.D. Cal. 2000)......................................................15, 24

*Morlife, Inc. v. Perry*,
   56 Cal. App. 4th 1514 (Ct. App. 1997) .........................................................20

*Oculus Innovative Scis., Inc. v. Nofil Corp.*,
   No. C 06-1686-SI, 2007 WL 4044867 (N.D. Cal. Nov. 15, 2007)...............20

*Pyro Spectaculars North, Inc. v. Souza*,
   861 F.Supp.2d 1079 (E.D. Cal. 2012)......................................................15, 24

PLAINTIFF GLAUKOS'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE

5074992

<u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

*Saini v. Int'l Game Tech.*,
  434 F. Supp. 2d 913 (D. Nev. 2006) ............................................................... 17

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ......................................................................... 17

*Wyndham Resort Dev. Corp. v. Bingham*,
  No. 2:10–cv–01556–GEB–KJM,  2010 WL 2720920 (E.D. Cal.
  July 8, 2010) ............................................................................................. 15, 17

**<u>Statutes</u>**

18 U.S.C. § 1836 ................................................................................................ 17, 18

18 U.S.C. § 1839(3) ........................................................................................... 14, 18

Cal. Bus. & Prof. Code § 17200 ............................................................................. 22

Cal. Civ. Code § 3426.1 .................................................................................... 19, 20

**<u>Rules</u>**

Fed. R. Civ. P. 65 ..........................................................................................3, 13, 24

**<u>Other Authorities</u>**

Congressional Report 114-529, Defend Trade Secrets Act of 2016
  (April 26, 2016) ......................................................................................... 18, 19

5074992

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Glaukos Corporation ("Glaukos" or "Company") is a leading ophthalmic medical technology company focused on the development and commercialization of breakthrough products and procedures designed to transform the treatment of glaucoma.  Glaukos manufactures and markets micro-scale injectable therapies that advance the existing glaucoma standard-of-care and enrich the lives and treatment alternatives for glaucoma patients worldwide.  Founded in 1998, Glaukos has built an impressive portfolio of products and sales network over nearly two decades, and it is now publicly traded on the New York Stock Exchange.  Information about how Glaukos identifies and communicates with customers, trains its sales force, and markets its products is highly sensitive and gives Glaukos a competitive advantage over other participants in the global glaucoma-treatment market.

Defendant Jacqueline Bailey ("Defendant" or "Bailey") is a former employee of Glaukos who left the company on August 31, 2016, to work for a competitor, Alcon Laboratories, Inc. ("Alcon").  In the weeks before her departure from Glaukos, Bailey systematically identified, accessed, and collected dozens of files containing Glaukos trade secrets and other confidential materials relevant to, and for use at, her new job with Alcon.  These acts breached her confidentiality obligations and fiduciary duties owed to Glaukos.  Among other things, she forwarded sensitive files to her personal email account, or surreptitiously took photos of sensitive information on her computer monitor with her phone and then emailed those photos to her personal email account.  While the full extent of Defendant's theft is currently unknown, Glaukos has verified that over 100 separate emails, photos of documents on her computer monitor, or other files have been taken by Defendant shortly before she left her employment to work for Alcon.  The timing and ever-increasing frequency of her theft tell a story of someone who had one foot out the door and wanted to have a competitive advantage at her new job.

PLAINTIFF GLAUKOS'S *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

5074992

Glaukos seeks a temporary restraining order to prevent immediate and irreparable damage through Defendant's unauthorized disclosure and use of these stolen trade secrets. The files that Defendant has stolen contain detailed, proprietary information concerning customer lists and purchase information, how Glaukos trains its sales force, communications with customers on product use and pricing, and Glaukos's overall business strategy for competing with the very company that Defendant now works for. In short, Defendant possesses stolen information that will give her new employer (and any other company) an unfair, unearned competitive advantage over Glaukos and insights into its sales, marketing, and training strategies. Defendant must be prevented from sharing this valuable, confidential information any further.

Glaukos therefore seeks the following relief:

- An order preventing Defendant from using, disclosing, or accessing documents or files containing information that she took from Glaukos;

- An order preventing Defendant from destroying the remaining evidence of her theft;

- An order requiring Defendant to disclose under oath to whom she disclosed or transferred these trade secrets, so that Glaukos may prevent further disclosure or use—intentional or accidental—by third parties; and

- An order requiring Defendant to turn over to OnlineSecurity, a computer forensics company, any devices containing documents she took from Glaukos, for a brief period of time so that Glaukos may have a forensic image taken of those devices to determine which secrets were stolen, and also requiring Defendant to permit OnlineSecurity to access to her personal email and could-based storage accounts for the same purpose.

Glaukos's request for an order preventing Defendant from using or disclosing any files taken from Glaukos is no broader than necessary to prevent irreparable harm. *First*, Defendant stole dozens upon dozens of files on the eve of her departure from

1  Glaukos. The full scope of her theft appears broader with each passing day as Glaukos
2  discovers more and more files to have been improperly taken. Therefore, it would be
3  impractical and impossible to list every individual file that Defendant stole. *Second*,
4  Defendant stole many of the sensitive files by taking photos of computer screens with
5  her mobile phone, presumably in an effort to cover her tracks and avoid leaving an
6  electronic trail of her deceit. For this reason, Glaukos is unable without discovery to
7  determine the full extent of the files that have been stolen. This point is underscored
8  by the fact that Defendant has failed to comply with Glaukos's request that she
9  immediately turn over all hard and electronic documents taken from Glaukos and
10 provide a list of the same. Defendant has offered no reason why she is unwilling to
11 mitigate the ongoing harm to Glaukos in this way. *Third*, Defendant was prohibited
12 by two signed confidentiality agreements from keeping any Glaukos files when she
13 left the Company's employment, so she should not be in possession of these documents
14 in any event.

15     In support of this Application, Glaukos includes a detailed forensic report by
16 Richard Gralnik at OnlineSecurity, a premier digital forensics and investigations firm.
17 Mr. Gralnik reviewed and analyzed Defendant's work computer and activity on her
18 Glaukos corporate email account between July 1 and September 1, 2016, and
19 discovered evidence of stolen files. This Application is also supported by the
20 declarations of Chris Calcaterra and Mark Menzies, who are employed by Glaukos
21 and are familiar with Defendant's access to sensitive Glaukos information and the
22 unique value of that information, respectively.

23     Glaukos respectfully requests that, pursuant to Rule 65, the Court issue the
24 requested temporary restraining order and order to show cause why a preliminary
25 injunction should not be granted to prevent Defendant from further irreparably
26 harming Glaukos.

27
28

## II.     FACTUAL BACKGROUND

Glaukos is a leading ophthalmic medical technology company that manufactures and markets breakthrough products designed to treat glaucoma. Calcaterra Decl. ¶ 2.  Glaukos is publicly traded and has built an impressive product line and sales network over nearly two decades.  Calcaterra Decl. ¶ 2.  Its confidential information and trade secrets are highly sensitive and are integral to Glaukos's ability to compete in the relevant market.  Calcaterra Decl. ¶ 2.

### A.     Defendant Exploits Her Access to Confidential Glaukos Databases to Steal Dozens of Proprietary Materials Concerning Customer Information and Business Strategies

Defendant was a Senior Regional Business Manager at Glaukos for the region covering northern and central Georgia.  Menzies Decl. ¶ 3.  Her work duties included selling Glaukos products and training doctors on how to use those products.  Menzies Decl. ¶ 3.  Her responsibilities required her to have access to proprietary sales and marketing information, such as customer lists, customer purchasing history, product pricing and guidelines for use, sales force training materials, and corporate business plans in preparation for competing with other participants in the glaucoma-treatment market, including Alcon.  Menzies Decl. ¶ 3.  When she became employed by Glaukos in October of 2015, Defendant signed a Confidential Information Agreement and agreed to be bound by its terms.  *See* Menzies Decl. ¶ 2, Exh. A.

Much of Defendant's access to sensitive Glaukos information was the result of her having access to the "Glaukos Connect" system, which is a secure, online platform by which Glaukos employees can view confidential training materials.  Calcaterra Decl. ¶ 3.  The Glaukos Connect system is a main repository of Glaukos's confidential, proprietary, and trade secret information.  Calcaterra Decl. ¶ 3.  Much of the information found on Glaukos Connect requires specific login credentials and a password to access.  Calcaterra Decl. ¶ 3.  In fact, the information found on Glaukos Connect is so sensitive that technological restrictions on the system itself prevent employees from downloading or emailing its contents.  Calcaterra Decl. ¶ 3.  Because

PLAINTIFF GLAUKOS'S *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

5074992

the Glaukos Connect system contains confidential information about Glaukos products and product messaging, it has great value to competitors like Alcon.  Calcaterra Decl. ¶ 3.

Defendant also had access to other sources of confidential information.  For instance, she received numerous pieces of sensitive, non-public correspondence from Glaukos sales directors, customers, and other individuals through her Glaukos email account.  Calcaterra Decl. ¶ 4.  She also had access to live online presentations, known as webinars, conducted by and for Glaukos's sales team.  Calcaterra Decl. ¶ 5.   As with the information on Glaukos Connect, access to Glaukos webinars was by invitation only and those presentations were made electronically available in such a way as to prevent their contents from being downloaded or emailed.  Calcaterra Decl. ¶ 5.  Both the webinars and the correspondence with customers would have great value to competitors because they contain, among other things, Glaukos marketing and strategic materials.  *See* Calcaterra Decl. ¶¶ 4–5.

In the two months before Defendant left employment with Glaukos to work for Alcon, she engaged in a careful scheme to plunder trade secrets from Glaukos Connect, Glaukos webinars, and her Glaukos email account.  Her theft was an iterative process in which she took a few files at a time over several weeks, culminating in a mass collection of files in the days before she resigned from Glaukos.  Defendant took so many proprietary Glaukos files—and so many may yet be undiscovered—that it is impossible to list them all here.  For illustrative purposes, Glaukos has identified some specific categories of trade secrets and confidential information contained within these files:

- Customer lists for the Southeast region, including detailed product purchase information such as quantities and revenues for over 100 customers. Calcaterra Decl. ¶ 6.

- Business plans for the Southeast region, including detailed information about potential customers to target and an analysis of Glaukos's near-term business risks.  Calcaterra Decl. ¶ 6.

- Presentations and written plans of Glaukos's competitive strategies, including strategies for competing with Alcon, the very company that Defendant now works for.  Calcaterra Decl. ¶ 6.

- Strategies regarding sales and marketing of products to teaching institutions, and confidential analysis of potential competition over such customers. Calcaterra Decl. ¶ 6.

- Documents containing guidance for customers with regard to contracting and obtaining device reimbursements for Glaukos's products.  Calcaterra Decl. ¶ 6.

- Directions from sales directors on how to communicate with Glaukos customers about specific issues those customers may encounter when using Glaukos products during surgery.  Calcaterra Decl. ¶ 6.

- Training materials and examinations that Glaukos developed in order to train its employees and confirm that the employees were educated about critical issues relating to Glaukos's products before interacting with customers.  The examinations are marked "FOR INTERNAL USE ONLY."  Calcaterra Decl. ¶ 6.

Many of these materials were improperly taken when Defendant forwarded emails from her Glaukos email account directly to her personal email account.  Gralnik Decl. ¶¶ 21-25, Exh. D (describing Defendant's email activity to her personal Gmail account).  When Defendant was prevented from downloading and emailing information from the Glaukos Connect system and Glaukos webinars, she took photos of her computer monitors when that information was displayed on her computer screen, then emailed those photos to her personal email account.  *See* Gralnik Decl. ¶¶ 21–25, Exh. D; *see also* Calcaterra Decl. ¶ 9.  Indeed, as noted above, information on the Glaukos Connect system and in Glaukos webinars could not be downloaded or emailed for the very purpose of preventing trade secret theft.

Defendant also engaged in other suspicious activity in the weeks before her departure from Glaukos that reflects her efforts to steal valuable information and carefully cover her tracks.  For instance, the following events took place within a *six-minute* period of time on the morning of August 18, 2016:

- 6 -

**8:12 a.m. (EST):** Defendant forwarded an email titled, "Transcend Medical CyPass Micro-Stent" from her Glaukos email account to her personal email account. The email concerned the CyPass® product made by her current employer and included as attachments two confidential documents named, "Key Messages" and "Competitive Response Attorney Client Privileged 02.23.16." Gralnik Decl. ¶ 25, Exh. E.

**8:14 a.m. (EST):** Defendant forwarded an email titled, "New Test: Details on Glaukos Connect Internal Website" from her Glaukos email account to her personal email account. The email included as attachments two confidential documents named, "GSM Combined, Selling the Science and Competition" and "Transcend Medical CyPass Micro-Stent." Gralnik Decl. ¶ 25, Exh. F.

**8:16 a.m. (EST):** Defendant contacted Glaukos's technical support help desk and obtained guidance on how to permanently delete items from her Glaukos email account. Calcaterra Decl. ¶ 12, Exh. A.

The timing of these events is simply too conspicuous to ignore. Defendant appears to have been attempting to affirmatively destroy any electronic trace of her theft.

### B. After Months of Undetected Theft, Defendant Solicits Glaukos's Customers, Tries to Access Key Trade Secrets, then Leaves Glaukos to Join a Competitor

On or around August 19, 2016, Defendant's superiors had heard rumors that she might soon leave the company to work elsewhere. *See* Menzies Decl. ¶ 4. On or around that day, one of her superiors asked her whether the rumors were true, and explained that the Company would need to know immediately if Defendant planned to leave for a competitor. Menzies Decl. ¶ 4. Defendant merely stated that other companies had approached her about working for them, but she denied having accepted a position elsewhere or having plans to leave Glaukos. Menzies Decl. ¶ 4.

Less than a week later, on August 31, Defendant gave a two-week notice that she was resigning from Glaukos and would be joining Alcon. Menzies Decl. ¶ 5. She

did so by notifying Mark Menzies, Director of Sales, that afternoon at 12:32 p.m. Pacific time. *See* Menzies Decl. ¶ 5. Given that she was going to work for a competitor and pursuant to Company policy, Glaukos advanced her resignation to be effective that same day. Menzies Decl. ¶ 5.

Within an hour of giving notice of her resignation, however, she sent an email from her Glaukos corporate email account to 78 customers and contacts of Glaukos announcing her decision to leave Glaukos and join its competitor, Alcon. Menzies Decl. ¶ 6. The email explained that she would be taking a national leadership role to help launch an Alcon product called "CyPass®" that competes directly with Glaukos's flagship glaucoma-treatment product, iStent®. Menzies Decl. ¶ 6. The email also contained her personal contact information and invited recipients to "reach out anytime!" Menzies Decl. ¶ 6. Glaukos did not authorize this communication and was unaware of it until after Defendant left the Company. Menzies Decl. ¶ 6.

By sending this email, Defendant improperly used her access to Glaukos's customers and contacts to solicit business away from Glaukos and to her new employer hours before leaving Glaukos. In doing so, she violated the terms of her Confidential Information Agreement, in which she agreed not to assist any business that is a current competitor of Glaukos during the term of her employment. *See* Menzies Decl. ¶ 2, Exh. A at § 1. That she chose to exclude any Glaukos personnel from the email suggests that Defendant knew this solicitation was prohibited, and would have been problematic for her if discovered.

Several Glaukos customers immediately responded to Defendant's email and expressed a desire to keep in touch as she transitioned to her new role at Alcon.[1]

---

[1] The total number of customer responses to Defendant's departure email is unknown because Glaukos does not have access to Defendant's personal email account and personal phone to which responses may have been sent. Glaukos suspects that there are potentially scores of such responses because one email written by Defendant in her Glaukos corporate email account indicates that "ALL Atlanta glaucoma and general surgeons" responded to her departure email through "phone calls, texts and many emails." Menzies Decl. ¶ 8.

PLAINTIFF GLAUKOS'S *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

5074992

Menzies Decl. ¶ 7.   In at least one instance, a customer said that he looked forward to working with Defendant after she left Glaukos, and Defendant forwarded that response from her Glaukos email account directly to two high-ranking employees at Alcon.  Menzies Decl. ¶ 7.  In the email to her new bosses, Defendant celebrated the numerous responses that she got to her departure email, all of which were ill-gotten. *See* Menzies Decl. ¶ 7.

In addition to Defendant's improper solicitation, Glaukos is aware of other activity from Defendant's final days as a Glaukos employee indicating that her conduct is even more nefarious.  For instance, after notifying Glaukos personnel of her decision to resign, Glaukos immediately locked Defendant's account on Glaukos Connect, thereby preventing her from accessing the information on that system.  Calcaterra Decl. ¶ 8.  Notwithstanding her resignation, Defendant continued to attempt to access Glaukos Connect throughout the day but was unable to do so.  Calcaterra Decl. ¶ 8.  This is troubling because, as Defendant was aware, that very same day Glaukos published a whitepaper on Glaukos Connect that detailed its strategy for competing with Alcon and the CyPass® product.  *See* Calcaterra Decl. ¶ 9.  Defendant had previously been notified that the whitepaper would be on Glaukos Connect and admitted to attempting to read it, despite the fact that she had given notice of her decision to leave Glaukos and work for Alcon.  Calcaterra Decl. ¶ 9–10.  When asked by Glaukos why she continued to seek access to restricted areas of the system after giving notice of her resignation, she said that she wanted "to explore the white paper out of curiosity."  Calcaterra Decl. ¶ 10.  Yet no amount of "curiosity" justifies a plain attempt by Defendant to review Glaukos's playbook before joining the competition.

Moreover, Glaukos is also now aware that four days before Defendant resigned from the company, she plugged a personal USB flash drive into her company computer potentially for the purpose of downloading additional files.  *See* Gralnik Decl. ¶¶ 30-34; Scheerer Decl. ¶ 2, Exh. 1.  This was the first time that this USB device was ever connected to Defendant's work computer.  Gralnik Decl. ¶¶ 30-34.  She then took this

USB drive with her when she left Glaukos.  *See* Scheerer Decl. ¶ 2, Exh. 1.  Defendant has admitted to taking the USB drive, but she has represented to Glaukos that her taking it was inadvertent, and that some unidentified person may have placed it in her car without her knowledge when she left Glaukos.  *See* Scheerer Decl. ¶ 3, Exh. 2.  Putting aside that this explanation is highly suspicious, even if true it does not explain why Defendant was stockpiling sensitive Glaukos information in the days prior to her departure.

Finally, records of Defendant's activity on Glaukos Connect indicate that she attempted to hoard two dozen confidential files on the night of August 30, 2016—the eve of her departure.  That evening, Defendant logged into the Glaukos Connect system for the first time in over a month and opened no fewer than 25 separate files concerning things like "Messaging," "Competitive Selling Deck," "CyPass Deck," "Glaucoma Standard of Care – Studies," and "iStent supra Training."  *See* Calcaterra Decl. ¶ 13, Exh. B.  This highly suspicious behavior is an unmistakable attempt to steal confidential and trade secret information before Defendant's access to the invaluable Glaukos Connect system was cut off.

**C.**   **Defendant's Theft of Confidential Information Is Strictly Prohibited by Her Confidential Information Agreement and Separation Certification**

The Confidential Information Agreement that Defendant signed when she started working for Glaukos in October of 2015 strictly prohibits her from taking confidential, proprietary, and trade secret information from Glaukos in the ways described.  It provides in relevant part:

> 3.   NONDISCLOSURE   OF   CONFIDENTIAL INFORMATION
> **I will not, without the prior written consent of (i) an officer of the Company**, in the event that I am not an executive officer of the Company, and (ii) the Board of Directors of the Company, in the event that I am an executive officer of the Company, **divulge to unauthorized persons, or use for any unauthorized purpose, either during or after the term of my employment, any**

- 10 -

**information, matter, or thing of a secret, confidential or private nature ("Confidential Information") connected with the business of the Company or any of its suppliers or customers.** Included within the meaning of Confidential Information are matters of a technical nature (including Inventions, know-how, formulae, computer programs, software and documentation, secret processes or machines, and research projects), **matters of a business nature (such as information about costs, profits, markets, sales, customers, potential customers, suppliers and employees), plans for further development, and any other information of a similar nature** not available to the public.

4. PROPERTY OF THE COMPANY
**All notes, memoranda, reports, drawings, blueprints, manuals, materials, data and other papers and records of every kind which shall come into my possession at any time after the commencement of my employment with the Company, relating to any Inventions or Confidential Information shall be the sole and exclusive property of the Company. This property shall be surrendered to the Company upon termination of my employment with the Company**, or upon request by the Company, at any other time either during or after the termination of such employment.

Menzies Decl. ¶ 2, Exh. A at §§ 3–4 (emphasis added).

The unambiguous language of the Confidential Information Agreement describes as confidential the very customer lists, business plans, sales training materials, and product information that Defendant meticulously stole in the weeks prior to her departure from Glaukos. Instead of surrendering all such information to the Company when her employment ended, as is required by the agreement, Defendant did the opposite—she seems to have saved as many files as she could to her USB drive, phone, and personal email account before finally being denied access to confidential systems by Glaukos.

On the day that Defendant gave notice of her resignation, Glaukos reminded her of her obligations under the Confidential Information Agreement.  Menzies Decl. ¶ 9. Defendant also executed a Separation Certification on the day of her resignation.  In addition to certifying that Defendant has "complied with all terms of the Company's Confidential Information Agreement," the signed Separation Certification also states:

> **This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, computer files in any format or media, correspondence**, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items **belonging to Glaukos Corporation**, its subsidiaries, affiliates, successors or assigns (together, "the Company"). . . .
>
> I further agree that, in compliance with the Agreement, **I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes**, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, **customer lists, business plans, financial information or other subject matter pertaining to any business of the Company** or any of its clients, consultants or licenses.

Menzies Decl. ¶ 9, Exh. B (emphasis added).  As Glaukos now knows, Defendant took valuable customer lists and data, internal correspondence, sales training materials, competitive strategy plans, and a USB device from Glaukos on the very day that she signed this Certification and in the weeks leading up to her departure.

### D. Defendant Fails to Comply with Glaukos's Efforts to Mitigate Dissemination of Its Confidential Information, Thereby Suggesting a Likelihood that She Will Continue to Harm Glaukos

After learning of Defendant's extensive theft of confidential information and trade secrets, Glaukos contacted Defendant on September 20, 2016, to demand the return of all such information and to remind her of her contractual and statutory

- 12 -

obligations to maintain the confidentiality of, and to not disclose or use, any such information.  *See* Scheerer Decl. ¶ 2, Exh. 1.  Glaukos demanded that Defendant immediately deliver to Glaukos all hard and electronic copies of written confidential information, return the USB drive that Defendant stole on her last day of employment, provide an itemized list of all materials thereby returned to Glaukos, and confirm that all such materials have been returned and that none of them have been shared with Defendant's new employer, Alcon.  *See* Scheerer Decl. ¶ 2, Exh. 1.  In response, Defendant indicated that she would return the USB drive.  *See* Scheerer Decl. ¶ 3, Exh. 2. But she has yet to do so. Calcaterra Decl. ¶ 11.  Moreover, she did not respond to any of Glaukos's other requests, including that she return the other materials she stole, confirm that they had not been shared with her new employer, and provide a list of all the materials at issue.  *See* Scheerer Decl. ¶ 3, Exh. 2.  Glaukos followed up with her on September 27, 2016, but she has not responded.  *See* Scheerer Decl. ¶ 4, Exh. 3; Calcaterra Decl. ¶ 11.

Defendant's failure to comply with—or even respond to—Glaukos's efforts to mitigate harm indicate that she does not respect her legal obligations to maintain confidentiality of Glaukos's trade secrets.   This fact amplifies the urgency of Glaukos's present request for a temporary restraining order.

For these reasons, counsel for Glaukos notified Defendant on October 7, 2016, of its intention to file this *ex parte* Application.  (*See* Stephan Decl. Re Notice ¶ 2.)

## II.   ARGUMENT

### A.   Glaukos Will Suffer Immediate and Irreparable Injury Unless this Court Issues the Requested Orders

A temporary restraining order is appropriate where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice" of the application.  Fed. R. Civ. P. 65(b)(1).  Both elements are satisfied here.  As noted

above, Glaukos's counsel notified Defendant of this *ex parte* Application. Therefore, the only remaining question is whether specific facts demonstrate that immediate and irreparable injury will result to Glaukos in the absence of the requested orders. It will.

Defendant is in possession of trade secrets and other confidential information that provides insight into Glaukos's internal business plans, customer relationships, and sales strategies. *See* 18 U.S.C. § 1839(3) (defining "trade secret" as "financial, business, scientific, [or] economic . . . information" that the owner has taken reasonable measures to keep secret and which derives "independent economic value"); *see also, e.g.*, *Gable-Leigh, Inc. v. N. Am. Miss*, No. CV 01-01019 MMM(SHX), 2001 WL 521695, at *15 (C.D. Cal. Apr. 13, 2001) ("It is well-established that a customer list may constitute a protectable trade secret."). In a competitor's hands, these materials constitute a roadmap for stealing Glaukos's hard-earned customers and emulating its employee training methods. Once these materials are disclosed, it is impossible to take them back or "unring the bell." The suspicious timing of Defendant's numerous email forwards and surreptitious screen photos on the eve of her departure from Glaukos leave no room for interpretation: Defendant is planning on using—or has already used—Glaukos's trade secrets with her current employer.

Moreover, Defendant is now employed by Alcon, a leading competitor of Glaukos, in what she describes as a "National leadership role." Indeed, public information reveals that she is now Alcon's National Training and KOL Manager, which means that her access to Glaukos employee training examinations and extensive customer information are particularly relevant to her current job.[2] *See* Scheerer Decl. ¶ 5, Exh. 4. Unless this Court enjoins Defendant, she will have the ability to use Glaukos's sensitive data in her high-level position with Alcon, and will be able to disclose it to her fellow Alcon employees. Such disclosure will irreparably damage

---

[2] In the medical device industry, "KOL" refers to "key opinion leaders," or elite doctors and hospitals who collaborate with companies in conducting research, writing articles, and similar activities.

PLAINTIFF GLAUKOS'S *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

5074992

Glaukos's business interests because it will allow Alcon to direct it sales efforts to Glaukos's current and potential customers who have already shown an interest in the type of glaucoma therapies offered by the iStent®, micro-scale glaucoma injectable therapies.  *See* Calcaterra Decl. ¶ 7.  Disclosure will also allow Alcon and other competitors to copy the sales and training methods that are proprietary to Glaukos, thereby making it harder for Glaukos to differentiate itself in the market on those grounds.  *See* Calcaterra Decl. ¶ 7.  Perhaps most importantly, disclosure will also reveal to Alcon the business plans and strategies that Glaukos plans on implementing in order to compete with that very company.  *See* Calcaterra Decl. ¶ 7.  Obviously, this would allow Defendant's employer to adjust its own business plans in response to those of Glaukos.  *See* Calcaterra Decl. ¶ 7.

Federal courts in this State have routinely issued restraining orders and preliminary injunctions seeking similar relief on similar facts, for the same reasons that Glaukos articulates here.  *See, e.g.*, *Pyro Spectaculars North, Inc. v. Souza*, 861 F.Supp.2d 1079 (E.D. Cal. 2012) (granting preliminary injunction to prohibit possession, use, or disclosure of confidential information where former employee of company transferred over 60 files, including customer information and proprietary software, from his work laptop to an external hard drive and USB drives before starting to work for a competitor); *Wyndham Resort Dev. Corp. v. Bingham*, No. 2:10–cv–01556–GEB–KJM, 2010 WL 2720920 (E.D. Cal. July 8, 2010), order entered by 2010 WL 2740158 (E.D. Cal. July 9, 2010) (granting preliminary injunction to prohibit use or disclosure of confidential information where former sales representative of company attempted to disclose customer lists to competitor, and where company had taken measures to maintain secrecy of its customer lists including by requiring employees to sign confidentiality agreements); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Garcia*, 127 F.Supp.2d 1305 (C.D. Cal. 2000) (granting preliminary injunction to prohibit former employees from using or disclosing client information, financial information, and other confidential information of previous employer where former

1   employees began working for competitor and improperly solicited previous

2   employer's customers).

3          Defendant will not suffer prejudice by being ordered to refrain from disclosing

4   and accessing the files she stole from Glaukos.  Defendant has no right to possess those

5   files in the first instance, so she also has no right to use or disclose them.  In addition

6   to violating trade secrets law and common tort law, Defendant's taking of these

7   documents violated unambiguous provisions of her Confidential Information

8   Agreement and Separation Certification that prohibit her from retaining Glaukos files.

9   Indeed, the Confidential Information Agreement authorizes injunctive relief in this

10  situation.  Menzies Decl. ¶ 2, Exh. A at § 5.3 ("I therefore agree that the Company

11  shall be entitled . . . to obtain an injunction from any court of competent jurisdiction

12  prohibiting the continuance or recurrence of any breach of this Agreement.").

13         Nor is Defendant unduly burdened by the proposed affirmative relief.  In order

14  to prevent additional or inadvertent disclosure or misappropriation by third parties,

15  Glaukos needs Defendant to identify under oath with whom she has shared stolen

16  Glaukos documents.  Merely drawing up a list of names of individuals or organizations

17  for Glaukos to contact to prevent further unauthorized disclosure of trade secrets is not

18  a heavy burden, particularly when weighed against the risk of imminent harm to

19  Glaukos.  Similarly, turning over physical devices containing stolen Glaukos files to

20  Glaukos's counsel for a limited period of time is necessary to ensure that evidence is

21  not destroyed or further obfuscated by Defendant, and that Glaukos can determine for

22  itself the full extent of trade secrets stolen.  *See, e.g.*, *Barney v. Burrow*, 558 F. Supp.

23  2d 1066, 1075 (E.D. Cal. 2008) (noting that temporary restraining order required

24  defendants "to provide defendants' personal computers for inspection and removal of

25  [plaintiff's] trade secrets, confidential client information and property").  Glaukos has

26  proposed a reasonable time limitation of three business days to ensure that Defendant

27  is not deprived of her property for an extended period.

28

**B.    The Court Should also Issue an Order to Show Cause Why a Preliminary Injunction Should Not Be Granted**

A Court may grant a preliminary injunction to prevent any "actual or threatened misappropriation."  18 U.S.C. § 1836(b)(3)(A).  Furthermore, under the Confidential Information Agreement, Defendant agreed that Glaukos would be entitled "to obtain an injunction from any court of competent jurisdiction prohibiting the continuance or recurrence of any breach of this Agreement."  Menzies Decl. ¶ 2, Exh. A at § 5.3.  Courts in the Ninth Circuit have enjoined former employees who have breached similar agreements.  *See, e.g.*, *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 924 (D. Nev. 2006) (granting preliminary injunction prohibiting former employee from disclosing confidential information and trade secrets in violation of confidentiality agreement).

An injunction is properly granted if the requesting party demonstrates that it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).  As detailed below, Glaukos satisfies the elements for granting the requested injunctive relief and temporary restraining order.

1.    Glaukos Faces Irreparable Harm

The balancing of harm favors Glaukos for the same reasons discussed in Part III.A above.  The analysis does not differ for preliminary injunctive relief here.  Glaukos faces irreparable harm in the competitive market, and the burden on Defendant from refraining from such wrongful activity is nonexistent.

2.    Glaukos Will Prevail on the Merits of Its Claims

Glaukos will also prevail on the merits at trial on each of its causes of action, although a likelihood of prevailing on just one cause of action satisfies this prong.  *See Wyndham Resort Dev. Corp. v. Bingham*, No. 2:10-CV-01556-GEB, 2010 WL 2720920, at *6 (E.D. Cal. July 8, 2010) (noting that likelihood of success on the merits

of just one claim is sufficient).  Even at this early stage and without an opportunity for discovery, the available facts reveal a meticulous effort by Defendant to steal confidential, proprietary information from Glaukos for use in her new position at a competitor company in violation of her written agreements, multiple laws, and common law torts.

### a. Misappropriation of Trade Secrets Under the Defend Trade Secrets Act

The Defend Trade Secrets Act ("DTSA") permits an "owner of a trade secret that is misappropriated" to bring a civil action if the "trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b).  A "trade secret" includes "financial, business, scientific, [or] economic . . . information" that the owner has taken reasonable measures to keep secret and which derives "independent economic value."  18 U.S.C. § 1839(3).  "Misappropriation" includes, but is not limited to, the acquisition, disclosure, or use of a trade secret of another by a person "who knows or had reason to know that the trade secret was acquired by improper means," or who "knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret."  18 U.S.C. § 1839(5).  "Improper" means includes "theft," "misrepresentation," and "breach or inducement of a breach of a duty to maintain secrecy."  18 U.S.C. § 1839(6).

A court is likely to find that Defendant's taking of Glaukos's customer lists, purchasing information, training materials, communications with customers, and confidential business strategy constitutes a violation of the DTSA.  These materials are the very types of information meant to be protected as trade secrets by the DTSA.  *See* Congressional Report 114-529, Defend Trade Secrets Act of 2016, at *2 (April 26, 2016) ("Examples of trade secrets include . . . customer lists.").  Glaukos derived independent economic advantage from the fact that the information in these materials was not generally known.  For instance, its business strategy for competing with Alcon

1   is worthless if that strategy is made known to Alcon.  Furthermore, Glaukos took
2   reasonable measures to keep this information secret.  It was password protected on
3   secure online portals, and employees (including Defendant) were required to sign
4   multiple documents acknowledging the confidentiality of these materials and agreeing
5   not to disclose or use them outside of Glaukos business.  *See supra* Parts II.A., II.C.

6        Defendant misappropriated these trade secrets through improper means.  She
7   knew or had reason to know that taking Glaukos's customer lists, purchasing
8   information, training materials, and strategy for competing with competitors was
9   inappropriate.  She signed a Confidential Information Agreement when she started
10  working at Glaukos and a Separation Certification the day she left.  In both signed
11  documents she affirmed that she would not take, use, or disclose Glaukos's
12  confidential information after her employment at Glaukos ended, so she cannot now
13  claim to have been reasonably ignorant of her obligations.  Even putting aside the two
14  signed documents, it is common sense that Glaukos's business strategy and customer
15  list is proprietary to Glaukos and not for dissemination to its main competitor.  Indeed,
16  that is why she was unable to download or email material from the Glaukos Connect
17  system and instead had to take photographs of her computer screen to capture the
18  valuable information thereon.

19              *b.   Misappropriation of Trade Secrets under The California*
                    *Uniform Trade Secrets Act. ("CUTSA")*
20

21        As explained above, since the facts plainly reveal that Defendant took Glaukos's
22  confidential, proprietary, and trade secret information in the weeks leading up to and
23  after her resignation, Glaukos is likely to succeed on the merits of its CUTSA claim
24  just as it will on its DTSA claim.  This is apparent given that both statutes are based
25  on the Uniform Trade Secrets Act ("UTSA").  Like the DTSA, the CUTSA defines
26  "trade secrets" as including information that derives "independent economic value"
27  from "not being generally known to the public" which the owner has taken reasonable
28  measures to keep such information secret.  *See* Cal. Civ. Code § 3426.1(d).  Courts

1   have routinely held that the very information stolen by Bailey qualifies as trade secrets
2   under the CUTSA.  *See, e.g.*, *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1528 (Ct.
3   App. 1997); *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir.
4   1993) (finding that a customer database qualified as a trade secret under CUTSA
5   because it had potential economic value to allow a competitor to direct its sales efforts
6   to potential customers).

7          Again, like the DTSA, the CUTSA defines "misappropriation" as acquisition,
8   disclosure, or use of a trade secret "by a person who knows or has reason to know that
9   the trade secret was acquired by improper means" or is "acquired under circumstances
10  giving rise to a duty to maintain its secrecy or limit its use."  Cal. Civ. Code §
11  3426.1(b).  "Improper means" includes "theft," "misrepresentation," and "breach of a
12  duty to maintain secrecy."  Cal. Civ. Code § 3426.1(a).  Because the definitions under
13  the DTSA and CUTSA are nearly identical, Glaukos is likely to prevail on its CUTSA
14  claims for the same reasons it is likely to prevail on its DTSA claims recited above.

15                    *c.*    *Breach of Confidential Information Agreement*

16         Glaukos will prevail on a breach of contract claim.  In order to prove a breach
17  of contract claim, Glaukos must show the existence of a contract, obligations under
18  that contract, breach by Defendant of those obligations, and damages.    *FPI*
19  *Development Inc., v. Nakashima*, 231 Cal. App. 3d 367, 383 (Ct. App. 1991).
20  Confidentiality agreements, like the one in this case, are enforceable in California.
21  *See, e.g.*, *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-1686-SI, 2007 WL
22  4044867, at *3 (N.D. Cal. Nov. 15, 2007).

23         When Defendant was hired, she signed a Confidential Information Agreement
24  prohibiting her from "divulg[ing] to unauthorized persons, or use for any unauthorized
25  purpose, either during or after the term of my employment, any information, matter,
26  or thing of a secret, confidential or private nature . . . connected with the business of
27  the Company or any of its suppliers or customers."  Menzies Decl. ¶ 2, Exh. A at § 3.
28  The Confidential Information Agreement prohibited Defendant "[d]uring the term of

1  [her] employment by the Company . . . [from] directly or indirectly . . . assist[ing] any

2  business which is a current or potential supplier, customer or competitor of the

3  Company."  Menzies Decl. ¶ 2, Exh. A at § 1.

4      On the day she resigned, Defendant signed a Separation Certification reiterating

5  that she "complied with all terms of the Company's Confidential Information

6  Agreement," and did not have any "devices, records, data, notes, reports, proposals,

7  lists, computer files in any format or media, correspondence, specifications, drawings,

8  blueprints, sketches, materials, equipment, other documents or property, or

9  reproductions of any aforementioned items."  Menzies Decl. ¶ 9, Exh. B.  In the

10  Separation Certification, she also promised to "preserve as confidential all trade

11  secrets, confidential knowledge, data or other proprietary information relating to

12  products, processes, know-how, designs, formulas, developmental or experimental

13  work, computer programs, databases, other original works of authorship, customer

14  lists, business plans, financial information or other subject matter pertaining to any

15  business" of Glaukos.  Menzies Decl. ¶ 9, Exh. B.

16      Both the Confidential Information Agreement and the Separation Certification

17  are valid contracts setting forth conditions of Defendant's employment.

18      When Defendant left Glaukos, Defendant violated her contractual obligations

19  under the Separation Certification and Sections 3 and 4 of the Confidential Information

20  Agreement.  She took with her customer lists, business plans, sales training materials,

21  and product information covered under the Separation Certification and the

22  Confidential Information Agreement. Moreover, while she was still employed at

23  Glaukos, Defendant used her Glaukos email account to email Glaukos customers and

24  contacts in an effort to solicit business away from Glaukos and to her new employer,

25  Alcon, in violation of her obligations under Section 1 of the Confidential Information

26  Agreement.  Her actions damaged and continue to damage Glaukos by the loss of

27  customers and confidential information to a rival company.

28

1  Based on the facts already presented to the Court at this early juncture, it is clear

2  that Glaukos will prevail on its breach of contract claim.

3         *d.     Breach of Fiduciary Duties and Duty of Loyalty*

4  As an agent of her principal, Glaukos, Defendant was obligated at all times

5  during her employment to "act loyally for [Glaukos's] benefit in all matters connected

6  with the agency relationship." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 411

7  (Ct. App. 2007).   As part of this duty, Defendant was obligated "to refrain from

8  competing with the principal and from taking action on behalf of or otherwise assisting

9  the principal's competitors." *Id.* at 416 (internal quotation marks and citations

10  omitted).   Instead, Defendant violated her written agreements with Glaukos and

11  common law obligations by acting in her future employer's interests rather than

12  Glaukos's.  For example, while she was still employed at Glaukos, Defendant used her

13  Glaukos corporate email account to email Glaukos customers and contacts in an effort

14  to solicit business away from Glaukos and to her new employer, Alcon.  Based on

15  these facts, Glaukos is likely to prevail on its cause of action for breach of the duty of

16  loyalty.

17  As a fiduciary of Glaukos, Defendant was also "duty bound to act with the

18  utmost good faith for the benefit of [Glaukos]." *Cleveland v. Johnson*, 209 Cal. App.

19  4th 1315, 1338 (Ct. App. 2012) (internal quotation marks and citations omitted).  For

20  the same reasons cited above, Defendant acted in bad faith and for the benefit of herself

21  and her future employer.  Glaukos is thus likely to prevail on its cause of action for

22  breach of fiduciary duty.

23         *e.     Unfair Competition Law ("UCL")*

24  California's UCL prohibits any business practice that is "unlawful, unfair, or

25  fraudulent."  Cal. Bus. & Prof. Code § 17200.  The UCL allows courts to enjoin the

26  unfair and unlawful conduct undertaken by Defendant in this case. *See, e.g.*, *Klamath-*

27  *Orleans Lumber, Inc. v. Miller*, 87 Cal. App. 3d 458, 466–67 (Ct. App. 1978)

28  (upholding injunction against two former employees from soliciting former

employer's customers under the UCL); *Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1291 (Ct. App. 1990) (former employees use of confidential information to compete and solicit business of former employer is unfair competition). Defendant, like those in *Miller* and *Camacho*, misappropriated confidential information, among other things customer lists, in order to divert customers she had while employed at Glaukos.  Indeed, one of her final actions at Glaukos was to covertly solicit customers in an email from her Glaukos corporate email account, thereby attempting to steal Glaukos's business.  This is the very kind of unfair and unlawful business practice that the UCL is designed to protect against.

Moreover, Defendant engaged in unlawful conduct by violating California Penal Code Section 502, which prohibits unauthorized access to computers and computer data.  *Cf. Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (stating that the UCL "borrows violations of other laws and treats these violations" as "unlawful practices independently actionable" under the statute) (internal quotation marks and citations omitted).  Downloading files to personal storage for use other than at her employment at Glaukos is a violation of Section 502.  Therefore, under well-established law, Glaukos has a strong likelihood of success on its unfair competition claim under the UCL.

### 3.    The Balance of Hardships Tips in Glaukos's Favor

Glaukos has a vital interest in protecting its trade secrets and other confidential information and preventing competitors from using that information.  This information is essential to Glaukos's ability to compete in the glaucoma-treatment market.  If discovered by a competitor, Glaukos's ability to target key customers, differentiate its products and services, and respond to anticipated competition would be severely limited.

Defendant, on the other hand, has no right to use Glaukos's proprietary information.  Granting the requested relief, therefore, "would essentially only require [Defendant] to abide by existing law regarding the unauthorized use of another's trade

PLAINTIFF GLAUKOS'S *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

5074992

secrets." *See Pyro Spectaculars N., Inc.*, 861 F. Supp. 2d at 1092.  In fact, given that Defendant signed two separate documents affirming that she would not use or disclose Glaukos's confidential information after her employment with the company ended, there is no genuine dispute that she cannot use or disclose Glaukos's proprietary information.  Because the narrow injunction sought is limited to proprietary information belonging to Glaukos, the balance of hardships weighs in Glaukos's favor.

### 4.   A Preliminary Injunction Is in the Public Interest

The injunctive relief requested by Glaukos will not adversely affect the public interest since there is no legitimate public interest in the unauthorized use or disclosure of a party's proprietary business information.  To the contrary, "it is in the public interest that trade secret customer lists be protected." *Gable-Leigh, Inc. v. N. Am. Miss*, No. CV 01-01019 MMM (SHX), 2001 WL 521695, at *20 (C.D. Cal. Apr. 13, 2001) (granting preliminary injunction prohibiting defendant from using plaintiff's customer lists); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*, No. CV 01-00659 CBM RCX, 2001 WL 283083, at *6 (C.D. Cal. Feb. 2, 2001) ("[I]ssuance of an injunction will promote the public interest in (i) the protection of trade secret client lists and other confidential and trade secret information . . . ."); *Pyro Spectaculars N., Inc.*, 861 F. Supp. 2d at 1093 ("[A]n injunction specifically focused on preventing misuse of [plaintiff's] trade secrets to solicit [plaintiff's] customers would serve the policy of protecting trade secrets while simultaneously allowing lawful competition.").

### 5.   The Court Should Not Require a Bond

Federal Rule of Civil Procedure 65(c) vests this Court with discretion as to whether to require a bond, and if so, the amount of the bond required, if any. *See Jorgansen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The Court may dispense with the filing of a bond, *id.*; *see also Gorbach v. Reno*, 219 F.3d 1087, 1093 (9th Cir. 2000), and a strong likelihood of success on the merits may also favor "a minimal bond or no bond at all." *See California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985).  The requested relief will cause no damage to Defendant since

she should never have stolen Glaukos's confidential, proprietary, and trade secret information in the first place, and she should not have solicited customers for Alcon while employed by Glaukos. Compliance with her obligations under the DTSA, CUTSA, the UCL, and with her contractual obligations, will cause her no harm.

## III.  <u>CONCLUSION</u>

Defendant Jacqueline Bailey has stolen trade secrets and other confidential information sufficient to allow a competitor of Glaukos to gain insight into Glaukos's business, sales, and marketing strategies.  Defendant now works for such a competitor, and has given every indication that she will use, or already has used, this confidential information at her new job to Glaukos's detriment.  Only an immediate order from this Court can prevent further harm.  Glaukos therefore respectfully requests that the Court grant the requested relief.

Dated: October 7, 2016           HUESTON HENNIGAN LLP


By: */s/ Douglas J. Dixon*
    John C. Hueston
    Douglas J. Dixon
    Michael J. Stephan
    Brian C. Berggren

    *Attorneys for Plaintiff*
    *Glaukos Corporation*

PLAINTIFF GLAUKOS'S *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

5074992